In the Matter of the Estate of CHARLES H. EBBETS, Deceased.

Surrogate's Court, Kings County, June 12, 1935.

*Wingate & Cullen* [*Cyrus S. Jullien* of counsel], for Ebbets-McKeever Exhibition Company.

*Gray & Tomlin* [*James M. Gray* of counsel], for the executors.

*George A. Logan* [*Charles H. Kirby* of counsel], for Charles H. Ebbets and others.

*Charles A. Webber*, for Charles H. Ebbets, 3d.

WINGATE, S. The issues raised by the fifty-four objections which have been interposed to the account of the executors in this proceeding were, by order entered on March 13, 1935, referred to Hon. Henry C. Turner " to examine the account rendered, to hear and determine all questions arising upon the settlement of said account which the Surrogate has power to determine, and to make a report thereon, subject, however, to confirmation or modification by the Surrogate."

The relations of two of the accounting fiduciaries to the Brooklyn National League Baseball Club, Inc., and to the corporation which holds title to the playing field used by it, have been so fully reviewed in the former opinions of the court in this proceeding (149 Misc. 260; 153 id. 775) that it will suffice for present purposes to recall that one of the accountants, Mr. Gilleaudeau, is a director of both corporations and that the same is true of the vice-chairman of the board of directors of the corporate fiduciary.

A considerable proportion of the objections which have been interposed challenge alleged malfeasances and neglects of the fiduciaries in connection with their relation to the two corporations, fifty per cent of the stock of which is held by the estate. These are apparently based upon the theories of *Matter of Auditore* (249 N. Y. 335; see, also, 136 Misc. 664, 667), and assert injury to this estate asset both as a result of overt acts on their part and by reason of negligence.

During the progress of the hearings before the referee the latter issued a subpœna *duces tecum* to both the baseball club and the

exhibition company, addressed particularly to James A. Mulvey, the secretary of both corporations, requiring the production of a large mass of papers, books and records of the two corporations.

The present application, made direct to the court, seeks to vacate or materially modify this subpœna *duces tecum.*

The question which presents itself at the threshold of a decision upon this application concerns the propriety of its submission to the court at all, in view of the fact that all questions respecting the account have been intrusted to the referee, " to hear and determine."

Unquestionably a court will usually decline to intervene for the purpose of intermediate review of determinations of incidental questions made by the referee in the trial of a submitted cause. Except, however, where statutory powers have been expressly delegated to the referee (See Civ. Prac. Act, §§ 406, 469), this is rather a matter of policy than of right, since the court certainly possesses certain discretionary authority " over the conduct of referees in the disposition of causes submitted to them." (*Leonard v. Mulry,* 93 N. Y. 392, 397.) (See, also, *Lecky v. Winston,* 186 App. Div. 642, 644.)

On the question of the propriety of the issuance of a subpœna *duces tecum,* however, a direct application to the court for review of a ruling by the referee appears authorized by the provisions of section 469 of the Civil Practice Act. So far as presently pertinent, this reads: " The referee exercises * * * the same powers as the court * * * to subpœna a witness to attend before him and *in a proper case* to bring with him a book, document or other paper." (Italics not in original.)

As is pointed out by the Court of Appeals in *Matter of Hirshfield v. Craig* (239 N. Y. 98, 117, 118), the power of a referee under this language to issue an ordinary subpœna is unlimited, wherefore the qualification upon the right of issuance of a subpœna *duces tecum,* indicated by the inclusion of the foregoing italicized words, demonstrates a legislative intent that " the person subpœnaed may secure an adjudication as to whether a proper case is presented before he can be compelled to obey the command contained in the subpœna."

It follows, therefore, that the present application is properly made to the court at this time.

Whereas the decision in *Hirshfield v. Craig* is helpful on the subject of the practice here involved, it sheds little light upon the question of the propriety of the particular subpœna which is presently in issue.

The allegations in the moving papers on this application, when reduced to their lowest terms, set forth the following reasons for the modification or complete quashing of the subpœna: That the

corporations are not parties to the accounting proceeding and that none of the contestants are stockholders; that the accountants are not the holders of a majority of the stock of the corporation but only of fifty per cent thereof and that the holders of the other fifty per cent are in sympathy with the present application; that the purpose of the contestants is merely to examine into the private affairs of the corporations concerning which they have already been supplied with information; that the business of the corporations is of a highly competitive nature, publicity concerning which is potentially dangerous to their welfare; and that the calling of the corporations as witnesses with the production of their records might create an impression that the corporations were individually involved in the litigation.

There are few of these alleged bases for the modification or complete vacating of the subpœna which would not apply to the situation of innumerable persons called as witnesses in daily proceedings in every court in the land. An instance is indeed a rarity where a person, not personally interested in a litigation, views with complacence the expenditure of time and effort required to attend a judicial hearing for the adjudication of the rights of others, and were it impossible for a party to a litigation to compel one possessed of relevant information to attend, the effectuation of his rights would prove impossible in a preponderant majority of instances. " Compulsory measures for the production of evidence are essential to the very existence of a court of justice in any civilized community." (*Matter of Makames*, 238 App. Div. 534, 536.) (See, also, 1 Phillips Ev. p. 3, cited and followed in *Central Nat. Bank* v. *Arthur*, 2 Sweeny, 194, 199.)

Since in many situations the introduction of documentary evidence is as indispensable to the attainment of justice as is that which is adduced verbally, it is obvious that the two varieties of subpœnas must stand on the same footing in this connection. In the case of either, certain situations arise in which the law will not compel an unwilling witness to make disclosure. Such instances are, however, extraordinary and are fully and specifically covered in the pertinent portions of the statutes and constitutions. In the ordinary case, any person may be compelled to supply any evidence whether verbal or documentary which may be relevant to the questions in issue, and considerations of his personal convenience or preference are wholly immaterial. His only consolation in this situation is found in the knowledge that when he, himself, is a litigant, the court will enforce his own identical rights against others whose inclinations would similarly induce them to withhold their aid, were it permissible.

The statement in the application that the contestants are already familiar with the facts reflected in the records subpœnaed, demonstrates merely the basic misunderstanding of the applicant respecting the nature of the process here in question. It is not inquisitorial but is for the purpose of assisting the contestant in the legal demonstration of his right to a recovery. The litigant may possess personal knowledge of many relevant matters, but this will not aid him in the litigation unless the known facts are duly spread upon the trial records. The office of a subpœna *duces tecum* is aptly depicted in *Franklin* v. *Judson* (96 App. Div. 607) which was an appeal from an order denying a motion to vacate such a process. The opinion reads in part: " This appeal seems to proceed upon the theory that the subpœna requires the appellant [the witness] to produce his books and papers for the plaintiff's inspection. The subpœna does not so read nor is such its office. The appellant can be subpœnaed to produce his books only so that he can by reference to them answer questions pertinent to the inquiry being conducted before the court. It gives no right whatever to the inspection of the books by the plaintiff's counsel."

To this may be added the words of Chancellor WALWORTH in *Aikin* v. *Martin* (11 Paige, 499, 501): " Where a deed or instrument which a party wishes to prove as an exhibit, is in the hands of a third person, who is unwilling to produce the same, the proper course is to compel him to produce it, under a subpœna *duces tecum;* and to have the witnesses in attendance to prove the exhibit, or to be examined in relation thereto, when it is thus produced."

It is difficult to imagine a case which is not substantially on a factual parity with *Matter of Hirshfield* v. *Craig* (*supra*), in which it would be proper for a court, in advance of the trial, to determine that documentary evidence specifically required by a subpœna *duces tecum* need not be physically produced at the hearing. Whether or not, when produced, it may be introduced in evidence, is an entirely different question involving not only considerations of constitutional and statutory privilege, but, even more commonly, its relevancy to the issues involved in the trial. In the vast majority of instances this is incapable of determination other than by the trier of the facts. In consequence, it would ordinarily be improper to vacate such a subpœna even though the contents of the documents sought were privileged, since such privilege might be waived upon the trial. (*Friedeberg* v. *Haffen*, 162 App. Div. 79, 80.)

Even more obviously is this true when the only objections advanced against the subpœna were based on questions of admissibility of the records subpœnaed on grounds of irrelevance or immateriality, since " very often the bearing of information is not sus-

ceptible of intelligent estimate until it is placed in its setting, a tile in the mosaic. Investigation will be paralyzed if arguments as to materiality or relevance, however appropriate at the hearing, are to be transferred upon a doubtful showing to the stage of a preliminary contest as to the obligation of the writ. Prophecy in such circumstances will step into the place that description and analysis may occupy more safely. Only where the futility of the process to uncover anything legitimate is inevitable or obvious must there be a halt upon the threshold." (*Matter of Edge Ho Holding Corp.*, 256 N. Y. 374, 381.) (See, also, *Friedeberg* v. *Haffen*, 162 App. Div. 79, 80; *Franklin* v. *Judson*, 96 id. 607; *Clyde* v. *Rogers*, 24 Hun, 145, 146; *Wertheim* v. *Cont. Ry. & Trust Co.*, 3 Civ. Proc. Rep. 371, 374, 375; *Cent. Nat. Bank* v. *Arthur*, 2 Sweeny, 194, 198; *Aikin* v. *Martin*, 11 Paige, 499, 502; *Davenbagh* v. *McKinnie*, 5 Cow. 27.)

In the case at bar no allegation is made that the production of the desired records would violate any statutory or constitutional privilege, nor is it seriously contended that their introduction in evidence would be inadmissible on grounds of irrelevancy or incompetency. All that is asserted is, in effect, that the corporations do not desire to be witnesses and that they apprehend that if they are compelled to act in this capacity, it may have untoward effects on their business interests. On basic principles of procedure in the administration of justice and on the authorities hereinbefore cited, this is an insufficient demonstration to warrant the interposition of the court.

The application is, accordingly, in all respects denied, with costs. Enter order on notice.