Isadoee Bookstein, J.
Petitioner moves to quash a subpeena duces tecum issued by respondents.
The subpoena is directed to the petitioner, a corporate entity. It does not require the presence to testify of any specified officer or director of petitioner, although it requires the presence of petitioner, “as a witness to testify and give evidence in an inquiry into the following matters: ”
The space in the subpeena for stating the nature of the inquiry and the matters to be inquired into is left totally blank. Thus there is no identification or specification of any inquiry of any nature.
The subpeena would ordinarily be void for this omission. However, in the answering affidavit of Commissioner Monaghan he states the alleged purpose of the inquiry. This has been held to cure the omission in the subpoena as to the nature and purpose of the inquiry. (Matter of Dawn Operators v. Lyon, 283 App. Div. 358.)
The subpoena requires the production of books and papers, listed as 24 separate items, all for the years 1940 to 1946, inclusive.
The 24 items listed for production would seem to include virtually every record and every scrap of paper in the possession of petitioner.
Respondents have broad subpoena powers to compel the attendance of witnesses and the production of all relevant and material books, papers, etc. (Pari-Mutuel Revenue Law [L. 1940, ch. 254, as amd.], § 35.)
There is not thereby conferred “ an arbitrary and unbridled discretion as to the scope of his investigation. However broad the statutory language may be, the discretion must be exercised within bounds circumscribed by a reasonable relation to the subject-matter under investigation and to the public purpose to be achieved. So we have said that ‘ the statute does not commission the Attorney-General to embark upon any roving course for the purpose of generally prying into the affairs of any person. ’ ” (Carlisle v. Bennett, 268 N. Y. 212, 217.)
In his answering affidavit, respondent Monaghan states the purpose of the inquiry as follows: “ In the present matter, the Commission has publicly stated that it has determined to investigate the recent questions raised as to the conflicting stock inter *870 ests of the principals of Orange. Park Driving Association, Inc. and Saratoga Harness Racing Association, Inc., and their interlocking directorship and ownership and further inquiry is necessary concerning the circumstances surrounding the original stock acquisition of certain persons in the Saratoga Harness Racing Association, Inc., since the Commission has learned that some of the stock of Saratoga Raceway was acquired under questionable circumstances ”.
Assuming the purpose thus asserted is asserted in good faith, doubtless under the Pari-Mutuel Revenue Law, a proper subject for inquiry is presented.
It is, indeed, strange that such a purpose should exist after all these years and after the extensive Moreland Act investigation of several years ago, which devoted a great deal of its time and energy on the subject of stock acquisition in raceways and after which investigation, petitioner was the first raceway to be recommended for a license.
The affidavit of Commissioner Monaghan as to the demand made of Ernest B. Morris is sheer hearsay. He was not present and hence could not know what occurred then and there. No affidavit is presented from any one of the persons present who represented the commissioner. His statements on that subject must, therefore, be wholly disregarded and the uncontradicted version of Morris accepted. Morris says that he told the commissioner’s representative that he had in his office the stock certificate books and the stock transfer ledger of petitioner; that they were available then and there for examination to their hearts’ content; that all other books and records of petitioner were in petitioner’s office at Saratoga; that he could not permit removal of the stock certificate books and the stock transfer ledger from his office without authority of the board of directors or some other competent authority. It was then that the subpoena under attack was served.
Morris was justified in refusing to permit the removal of the stock certificate books and the stock transfer ledger. Respondents’ representatives had a perfect right to examine them without limit at the time and place when they asked for them but had no right to remove them, which was their apparent intention, as hereinafter shown.
Section 44-b of the Pari-Mutuel Revenue Law (added by L. 1954, ch. 510) confers on the respondents the broadest possible powers of visitation and examination and investigation 'c in the offices, tracks or other places of business of any ” raceway, of any and all of its books, records and papers, “ for the purpose of seeing that the provisions of this act and the *871 rules and regulations issued by the commission thereunder are strictly complied with ” (italics supplied).
Despite this vast and unlimited power, respondents seek, by the subpoena, to cause all such records, as listed in the subpoena, to be transported to the office of respondents in New York City.
There was purpose in granting such power to examine at the track or other office of a raceway. One purpose was to avoid the necessity for removing and transporting voluminous records and taking them from the possession of their owners.
Respondents argue that since both this power of visitation exists and the power to subpoena exists, respondents may proceed in either manner in their uncontrolled discretion. With this contention this court cannot agree. There must be a reasonable necessity for subpeening records, which are available for inspection at any and all times. If petitioner refused to permit such visitation and inspection, then the resort to the subpoena duces tecum would be wholly justified. Here there was no such refusal; on the contrary there was the offer to an unlimited examination of the only records which were in the office of the secretary of the petitioner.
Assuming, arguendo, that respondents had the choice between examination of the books and records at the track or other place of business of petitioner or of issuing a subpoena duces tecum for their production at the office of respondents in New York City, the records subpoenaed must be relevant and material to some inquiry.
Assuming that the purpose stated in the answering affidavit is the true purpose, how, for example, can the Horsemen’s Ledgers (Item 7); the Payroll Records (Item 8); Concessionaires’ Reports (Item 9); Petty Cash Book (Item 14); Accounts Payable Ledger (Item 18); Notes Receivable Ledgers (Item 19); Notes Payable Ledgers (Item 20); Paid Bills (Item 21) ; Admissions Reports — City, County, State, Federal (Item 23) be in any way material or relevant to an inquiry as to “ conflicting stock interests of the principals of Orange Park Driving Association, Inc. and Saratoga Harness Racing Association, Inc. and their interlocking directorship and ownership ” and as to ‘ ‘ the circumstances surrounding the original stock acquisition of certain persons in the Saratoga Harness Racing Association, Inc., since the Commission has learned that some of the stock of Saratoga Raceway was acquired under questionable circumstances ” ? It seems clear that the answer must be that they are not and that is doubtless true of other items in the subpoena.
*872 Parenthetically, the subpoena fails to comply with the requirements of paragraph 1 of section 406 and section 414 of the Civil Practice Act. Service thereof failed to comply with section 411 of the Civil Practice Act, same having been served on October 17, 1957 requiring a production on October 21, 1957.
Nor can a subpoena duces tecum be used for the purpose of discovery or to ascertain the existence of evidence. (Cf. Matter of Ebbets, 155 Misc. 870, 874.)
It is recognition of this latter rule which doubtless prompted the Legislature to confer upon respondents the unlimited power of investigation and discovery, found in section 44-b of the PariMutuel Revenue Law.
In the present case, respondents did not subpoena any officer or director of petitioner to testify. The subpoena is directed to the corporate entity and not to any officer or director thereof. This leaves it apparent that respondents did not intend on the return date of the subpoena to conduct any hearing at all at which the books and records subpoenaed would be used. It indicates only an intention to have the documents under subpoena produced and left with respondents for discovery and inspection. For this there is no necessity, in view of the unlimited power of respondents to have inspection and discovery at the place or places fixed by law. Respondents’ intention in this regard is shown by the following statement in the answering affidavit: ‘ ‘ Compliance with the request for the books and records would not have imposed any financial burden on the Saratoga Raceway Association, Inc., since the officers of this commission were then and there present with the purpose of carrying said books and records to the office of the Commission in New York City ”. Neither the Pari-Mutuel Revenue Law nor a subpoena duces tecum confer upon respondents any such right.
The respondents are given subpoena powers under section 35 of the Pari-Mutuel Revenue Law and under section 47 thereof. Of course, such a subpoena power is necessary as to persons against whom respondents do not have the unrestricted power of visitation and inspection, such as they have against petitioner under section 44-b of the Pari-Mutuel Revenue Law. Nor is this to say that, in a proper case, the power to subpoena petitioner does not exist.
This is not a proper case for the subpoena issued. As already pointed out, respondents have an unrestricted right to examine all books and records of petitioner, at its place of business. Such right has not been denied. No demand for such examination has been refused.
*873 Moreover, the subpoena, clearly requires the production at a place far removed from petitioner’s place of business of voluminous records, which can have no possible relevancy to the presently asserted purpose of inquiry.
Unlike the unlimited right of visitation, the subpoena power can he limited by the court. (Matter of Ellis, 176 Misc. 887.) The subpoena duces, tecum can issue only in a ‘ ‘ proper case ’ ’. (Civ. Prac. Act, § 406.) The subpoena in this case, on the papers before me, seems to be not a use of power but rather an abuse of power. It is arbitrary and unnecessary as well as oppressive.
Motion to quash subpoena is granted.
Submit order.