OPINION OF THE COURT
Valerie Alexander, J.
If William Shakespeare were writing this decision, he would no doubt have entitled it “Much Ado About Nothing.”
The defendant herein is charged with assault in the third degree, a class A misdemeanor, and three counts of harassment in the second degree, a violation. It is alleged that at 4:00 p.m. on October 6, 2007, in the vicinity of 2696 W Alder Road, Bell-more, New York, the defendant punched and choked the complainant, his live-in girlfriend, causing her substantial pain and difficulty in swallowing. The People move to quash a subpoena issued by defense counsel to CVS Pharmacy for the complainant’s pharmacy records. The defense opposes the motion and cross-moves for an order by this court recusing itself from this case for reasons of bias and, upon assignment to another judge, dismissing the charges on constitutional and statutory speedy trial grounds as well as for the alleged violation of his due process rights and his rights under Brady v Maryland (373 US 83 [1963]).
The issues presented in these motions arise from the following events. On or about November 2007, defense counsel served a subpoena upon CVS Pharmacy for the complainant’s prescription records. The subpoena was not so-ordered and was not Health Insurance Portability and Accountability Act (HIPAA) compliant, an issue the court will address later in more detail. CVS nevertheless forwarded the requested records to the court where they were received by the Clerk’s Office. At about *595 the same time, the People served a so-ordered subpoena upon South Nassau Communities Hospital for the complainant’s medical records regarding a hospital admission on October 8, 2007, two days after the alleged assault. The admission lasted two days, until October 10, 2007, when the complainant was discharged. That subpoena called for the hospital records to be delivered to the Clerk of the District Court. Apparently, upon receipt of these two sets of records, the Clerk forwarded both sets of records to the prosecutor handling the case. In scanning the CVS records, the prosecutor realized that the CVS records were provided in response to a defense subpoena and brought the matter to the attention of the court and defense counsel. Both sets of records are now in the possession of the court.
Thereafter, numerous conferences took place at which the defense claimed to be entitled to access to both sets of records. The court expressed concern that the CVS records were improperly obtained in that defense counsel’s subpoena was not HIPAA compliant. After some delay without resolution of this issue, the court suggested the prosecution file a motion to quash so that the matter could be properly briefed. That motion was filed on August 8, 2008, and the cross motion with opposition and reply were subsequently filed and the matter was submitted to the court for decision on December 15, 2008.
Turning first to the cross motion to recuse, defense counsel alleges that the court is biased against the defendant in violation of Judiciary Law § 14 and Canons 1, 2, and 3 of the Code of Judicial Conduct. In support of that contention, and by way of example, counsel argues that the court erred in:
1. Wrongly believing that defense counsel’s subpoena was unenforceable.
2. Permitting the plaintiff to review the records in question while denying the same opportunity to the defense.
3. Delaying in concluding its own premotion research regarding the HIPAA issue.
4. Not allowing the defense counsel to make a record regarding its position in this matter.
5. Advising the prosecution to make the instant motion to quash.
Judiciary Law § 14 provides in relevant part:
“A judge shall not sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding to which he is a party, or in which he *596 has been attorney or counsel, or in which he is interested, or if he is related by consanguinity or affinity to any party to the controversy within the sixth degree.”
Canon 1 is entitled “A Judge Should Uphold the Integrity and Independence of the Judiciary.” Canon 2 is entitled “A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities.” Canon 2, Commentary (2.2) (2A) notes that “[t]he test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge’s ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.” Canon 3 is entitled “A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.”
This court has not violated either the Judiciary Law or the Canons of the Code of Judicial Conduct. As will be discussed shortly, the court was entirely correct in fearing that the defendant’s subpoena was improper and unenforceable in that it failed to comply with HIPAA and the sections of the Code of Federal Regulations enacted pursuant to it. The court did not “permit” the prosecutor to review any medical records herein. Any such review occurred prior to the matter being brought to the court’s attention. There was some delay engendered by the court’s initial efforts to research the HIPAA issue which could have easily been limited by legal input from defense counsel. The court then ultimately, in order to properly rule on the matter, suggested the instant motion to quash which at the same time provided the court with some assistance in its research and gave the defense its opportunity to make as full and complete a record as it desired. (In this regard, the court notes that the defense did not take this opportunity, despite a 29-page cross motion and a 21-page reply, to provide the court with a single case or statutory citation in support of its position on the HIPAA issue.) Finally, the court did not err in suggesting the prosecutor make the instant motion to quash. It is appropriate for the court to interject itself into the proceedings to the extent necessary to resolve disputes between counsel or to clarify important issues and keep the proceedings on track (People v Mees, 47 NY2d 997 [1979]; People v Moulton, 43 NY2d 944 [1978]; People v De Jesus, 42 NY2d 519 [1977]).
Absent a legal disqualification under Judiciary Law § 14, which in this case does not exist, a trial judge is the sole arbiter of its recusal to avoid the appearance of impropriety, and the de *597 cisión is left to the personal conscience of the court (People v Moreno, 70 NY2d 403 [1987]; People v Gallagher, 158 AD2d 469 [1990]). This court holds no bias whatsoever against this defendant. Neither does the court believe that a fair reading of the record to date could or would lead a reasonable person to conclude otherwise. Accordingly, the motion to have this court recuse itself from further proceedings is denied.
Nearly a decade ago, Congress passed HIPAA. In part, this legislation seeks to protect a patient’s right to privacy regarding medical information. The requirements of the federal law have been incorporated into our state discovery procedures. For instance, CPLR 3122 (a) was amended in 2002, effective September 1, 2003, to provide in relevant part:
“A medical provider served with a subpoena duces tecum requesting the production of a patient’s medical records pursuant to this rule need not respond or object to the subpoena if the subpoena is not accompanied by a written authorization by the patient. Any subpoena served upon a medical provider requesting the medical records of a patient shall state in conspicuous bold-faced type that the records shall not be provided unless the subpoena is accompanied by a written authorization by the patient.”
HIPAA compliant authorizations are now required for health care provider compliance with a subpoena duces tecum (CPLR 3122 [a]; Matter of Ettinger, 7 Misc 3d 316 [2005]). The portion of the regulatory scheme which addresses disclosure in judicial proceedings is found in 45 CFR 164.512, entitled “Uses and disclosures for which an authorization or opportunity to agree or object is not required.” The regulation states:
“A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section. When the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section, the covered entity’s information and the individual’s agreement may be given orally . . .
*598 “(e) Standard: Disclosures for judicial and administrative proceedings.
“(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
“(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information
expressly authorized by such order; or “(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
“(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1) (iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
“(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1) (iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(l)(v) of this section,
“(iii) For the purposes of paragraph (e)(l)(ii)(A) of this section, a covered entity receives satisfactory assurances from a party seeking protect[ed] health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:
“(A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual’s location is unknown, to mail a notice to the individual’s last known address);
“(B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and
“(C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:
*599 “(1) No objections were filed; or
“(2) All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution.
“(iv) For the purposes of paragraph (e)(1)(ii)(B) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:
“(A) The parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; or
“(B) The party seeking the protected health information has requested a qualified protective order from such court or administrative tribunal.
“(v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1) (ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:
“(A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
“(B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.
“(vi) Notwithstanding paragraph (e)(1)(ii) of this section, a covered entity may disclose protected health information in response to lawful process described in paragraph (e)(l)(ii) of this section without receiving satisfactory assurance under paragraph (e)(l)(ii)(A) or (B) of this section, if the covered entity makes reasonable efforts to provide notice to the individual sufficient to meet the requirements of paragraph (e)(1) (iii) of this section or to seek a qualified protective order sufficient to meet the requirements of paragraph (e)(1) (iv) of *600 this section.” (45 CFR 164.512.)
In summary then, medical records may be obtained from a provider without a written authorization from the patient only where the disclosure is made pursuant to an order of the court (as in the case of a so-ordered subpoena), pursuant to 45 CFR 164.512 (e) (1) (i), or pursuant to a subpoena which must be accompanied by assurances that either notice and an opportunity to object have been given to the patient pursuant to 45 CFR 164.512 (e) (1) (ii) (A) or that a qualified protective order has either been agreed to or sought from the court pursuant to 45 CFR 164.512 (e) (1) (ii) (B). In the instant matter, there is no indication that the defense has complied with any of the requirements of HIPAA and, accordingly, the subpoena is unenforceable and may be ignored by the subpoenaed entity.
Even if the instant subpoena were so-ordered by the court or otherwise HIPAA compliant, the motion to quash would have to be granted. Pursuant to CPL 610.10 (3), “ ‘subpoena’ includes a ‘subpoena duces tecum.’ A subpoena duces tecum is a subpoena requiring the witness to bring with him and produce specified physical evidence.” The purpose is so that they may be referred to by a witness in his testimony, not as a tool for discovery (Franklin v Judson, 96 App Div 607 [1904]). As explained by the court in People v Coleman (75 Misc 2d 1090, 1091-1092 [1973]):
“ ‘A subpoena duces tecum [may not] be used for the purpose of discovery or to ascertain the existence of evidence.’ (Matter of Saratoga Harness Racing Assn. v. Monaghan, 9 Misc 2d 868, 872; Cataldo v. County of Monroe, 38 Misc 2d 768, affd. 19 A D 2d 852.) Rather, it is a court process which directs an individual to appear together with books, documents, papers or other items in his possession so that by reference to these items he may give testimony relevant to the matter under inquiry and, through the production of evidence, assist in the pursuit of truth. (CPL 610.10, subds. 2, 3; CPLR 2301; Franklin v. Judson, 96 App. Div. 607.)”
Neither is a subpoena proper where it is facially overbroad. The instant subpoena calls for: “all prescription records for JESSICA MEDINA, . . . including dates, prescription drugs names, dosages, renewals, and prescribing doctors.” No justification has been given here for such an open-ended demand.
Finally, and fatal to the disclosure of both sets of medical records herein, there is the requirement of materiality and relevancy. It *601 must appear that the material sought is material and relevant (People v Gissendanner, 48 NY2d 543 [1979]). As stated by the Court of Appeals in People v Gissendanner (at 549):
“access has been denied in cases in which the defendant failed to demonstrate any theory of relevancy and materiality, but, instead, merely desired the opportunity for an unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable him to impeach the witness.”
2 New York Criminal Practice § 17.09 (2) (2d ed), entitled “Medical Records of Witnesses-Discovery by Defendant,” states:
“A defendant is entitled to discovery and inspection of the psychiatric, psychological, and medical records of a complaining witness that contain information that may have some bearing on the witness’s credibility and ability to perceive the events in issue, i.e., to remember the events and to recount them. Psychiatric records are confidential, but they may be disclosed on a finding by the court that the interests of justice significantly outweigh the need for confidentiality. The proper procedure in such a case is for the court, after a showing of a reasonable likelihood that the records might contain material bearing on the reliability and accuracy of the witness’s testimony, to order production of the records and to inspect them in camera” (see also People v Gutkaiss, 206 AD2d 584 [1994]; People v Arredondo, 226 AD2d 322 [1996]).
Applying the above standards to both sets of records before the court, the court has conducted an in camera inspection and reviewed them carefully. The first set was provided by CVS Pharmacy in response to the instant subpoena. A review of these records reveals that the most recent prescription filled for the complainant herein was on May 14, 2007, five months prior to any injuries she may have sustained as a result of the assault charged herein. The second set of records was supplied by South Nassau Communities Hospital. They not only relate to an admission to that hospital on October 8, 2007, two days after this incident took place, but they reveal that the admission was for a medical issue totally unrelated to any injury arising out of the assault for which the defendant now stands accused. In other words, the treatment rendered in no way relates to injuries allegedly sustained by the complainant on October 6, *602 2007. Neither do the records suggest any impairment of “the witness’s credibility and ability to perceive the events in issue, i.e., to remember the events and to recount them.” (2 NY Grim Prac § 17.09 [2] [2d ed].) Accordingly, the court concludes that the subpoenaed records, both from CVS and from the hospital, are, indeed, much ado about nothing. The motion to quash the defendant’s subpoena is granted. The court further concludes that both sets of records are immaterial and irrelevant and, while the complainant’s hospital records were properly obtained, there shall be no further disclosure to either side and neither set of records may be admitted into evidence at trial.
The defendant also cross-moves to dismiss the charges on the grounds that his constitutional and statutory rights to a speedy trial have been violated and that he has been denied due process of law and his rights pursuant to Brady v Maryland (373 US 83 [1963]) because he has been denied access to the complainant’s medical records.
CPL 30.30 (1) (b) requires dismissal if the People are not ready for trial within 90 days of the filing of the District Court information. CPL 30.30 (4), regarding excludable periods, provides in relevant part:
“In computing the time within which the people must be ready for trial pursuant to subdivisions one and two, the following periods must be excluded:
“(a) a reasonable period of delay resulting from other proceedings concerning the defendant, including but not limited to: proceedings for the determination of competency and the period during which defendant is incompetent to stand trial; demand to produce; request for a bill of particulars; pre-trial motions; appeals; trial of other charges; and the period during which such matters are under consideration by the court; or
“(b) the period of delay resulting from a continuance granted by the court at the request of, or with the consent of, the defendant or his counsel. The court must grant such a continuance only if it is satisfied that postponement is in the interest of justice, taking into account the public interest in the prompt dispositions of criminal charges. A defendant without counsel must not be deemed to have consented to a continuance unless he has been advised by the court of his rights under these rules and the effect of his consent.”
*603 The statutory exclusions are intended to relieve the People of their duty to be ready for trial when they are not responsible for the delay in proceedings (People v Gonzalez, 181 Misc 2d 105 [1998]). For example, a reasonable period of time within which to notify a defendant to appear for arraignment is excludable under CPL 30.30 (4) (See People v Fuller, 216 AD2d 695 [1995]; People v Middlemiss, 198 AD2d 755 [1993]), as are periods during which a case is being scheduled or rescheduled by the clerk’s office, as these functions are beyond the control of the prosecutor (People v Carter, 91 NY2d 795 [1998]; People v Jones, 154 Misc 2d 481 [1992]). In addition, the statute provides for the exclusion of periods of time during which motions are made and pending before the court, without reference as to who made the motion or whether or not it was opposed.
The defendant herein was arraigned on October 8, 2007. More than 90 days have elapsed since the defendant’s arraignment. Much of this time is excludable pursuant to CPL 30.30 (4) (a) and (b) but the court is unable, from the limited information provided, to make a precise calculation. The court has the clerk’s notations on the case folder, but the court may not rely upon them exclusively to determine questions of excludability (People v Berkowitz, 50 NY2d 333 [1980]). Accordingly, the matter will be set down for a hearing pursuant to CPL 30.30, at which time the People will be called upon to supply the stenographer’s minutes or other evidence in admissible form as to the circumstances surrounding each adjournment.
Pursuant to People v Taranovich (37 NY2d 442 [1975]), resolution of defendant’s claim that his constitutional right to a speedy trial has been violated requires a weighing and consideration of the following factors: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay.
In this case, the period of delay is not extraordinary and was caused primarily by the defense and its numerous requests for adjournments. Most of the rest of the delay is attributable to the period during which these motions have been under consideration by the court. This is a domestic violence case during which there has not been a significant period of pretrial incarceration and there is no showing that the defense has been impaired in any way by the delay. Accordingly, the motion to dismiss on constitutional speedy trial grounds is denied.
*604 Lastly, there has been no showing that the defendant’s Brady or due process rights have been violated. As set forth above, the court has carefully reviewed the medical records, which are the basis of this claim by the defendant, and determined that the interests of justice do not significantly outweigh the complainant’s need and right to confidentiality (2 NY Grim Prac § 17.09 [2] [2d ed]). In addition, the court finds that the records contain no information which may be considered favorable to the defendant within the meaning of Brady v Maryland. Accordingly, the motion to dismiss upon this ground must be denied.
Accordingly, the instant motions are decided as follows:
1. The portion of defendant’s cross motion seeking the court’s recusal from this case is denied.
2. The portion of the defendant’s cross motion seeking dismissal of the charges based upon constitutional speedy trial grounds, violation of due process, and deprivation of Brady material is denied.
3. The portion of the defendant’s cross motion seeking dismissal pursuant to GPL 30.30 will be set down for a hearing on a date convenient to the court and counsel.
4. The People’s motion to quash the defendant’s subpoena is granted. In addition, as the material supplied in response to both the defendant’s subpoena and the People’s subpoena is immaterial and irrelevant to the issues in this case, neither side shall have any further access to the records and the records shall not be admitted into evidence at trial.