Cooke, J.
 

 "It is 'the law of the land’ that no man’s life, liberty or property be forfeited as a punishment until there has been a charge fairly made and fairly tried in a public tribunal”
 
 (Matter of Oliver,
 
 333 US 257, 278). Such a right constitutes the most fundamental of all freedoms
 
 (Estes v Texas,
 
 381 US 532, 540). The underlying issue here is whether defendant Freddie De Jesus was deprived of such a trial.
 

 The prosecution’s proof indicated that at about 10:45 during the evening of August 30, 1972, while bakery truck driver Stephen Drowns waited in his halted vehicle for the gates of Levy’s Bakery to open, two youths approached the truck for the ostensible purpose of obtaining cake or doughnuts. When Drowns said he had no extra cake to give them and that he would ask the platform man at Levy’s if he had extra doughnuts, defendant slid through a truck door and placed a knife to the driver’s left side and held the driver back in the seat. One of the boys asked for "the monéy” and, when Drowns blew the horn, defendant told him to stop or he would put the knife through him. The other boy stood at the side of the truck near the door, held an unidentifiable object in his hand and threatened to blow Drown’s head off if he did not move fast. Drowns’ wallet and watch were seized and the two
 
 *521
 
 assailants ran around a corner and into one of Brooklyn’s streets. In a station house lineup Drowns identified defendant as one of the participants. This identification was confirmed on trial by testimony of a bakery security guard, who knew defendant from the vicinity, that he observed defendant on a stoop across from the bakery moments before the alleged robbery.
 

 Defendant presented an alibi defense, offering his own testimony and that of his girl friend and sister-in-law in support of his contention that he never left his apartment on the evening in question. It was related that defendant’s brother, Richard De Jesus, was in and out of the apartment during the evening, but said brother was not called as a witness.
 

 Defendant was convicted, after verdict, of robbery in the first degree, robbery in the second degree and grand larceny in the third degree. The Appellate Division affirmed, without opinion, two Justices dissenting. The dissent concluded that throughout the trial the Judge continually demonstrated manifest and open hostility toward defense counsel; that error was committed in allowing to stand uncorrected the prosecutor’s intimation during summation that, if acquitted, the defendant would be back on the street hurting others; and that, although not raised on appeal,
 
 [1]
 
 the prosecutor should not have commented during summation on the failure of the defendant to produce his brother as an alibi witness, since the alleged accomplice was his brother whose case had been handled in Family Court because of his age.
 

 I
 

 The trial was punctuated by the trial court’s frequent caustic, if not snide and sarcastic, remarks directed at defense counsel. Taken out of context for the sake of brevity, these comments in the jury’s presence, included expressions such as:
 

 "You’re putting words in his [the witness’] mouth, and everybody can see it, Mr. Wagner [on cross-examination]”;
 

 "you know your questions are inaccurate [on cross-examination]”;
 

 "Let’s not be playing any games”;
 

 
 *522
 
 "You’re leading to beat the band”;
 

 "And I don’t need any help from you”;
 

 "Are you going to have a play on words now?”
 

 "This is cross examination, and you know it. There is a lot more latitude on cross examination than direct, and this is cross examination, and you heard me rule like this many times. It doesn’t come as any surprise to you”;
 

 "Oh, come on. Try this case [after defense counsel requested a brief conversation at the bar]”;
 

 "It is not good enough then, Mr. Wagner and you know better. You’re not inexperienced [after defense counsel asked an alibi witness where she was the day before defendant’s arrest]”;
 

 "Are you such a creature of bad habits, I mean, legally speaking, that you just persist?”
 

 "I said exception. You are going to learn how to take a ruling from a Court if it’s the last thing you learn and I trust it won’t be the last. I hope you’re around longer than that. Now come on.”
 

 "That’s two questions in one. [Mr. Wagner: Withdrawn.] And you knew you framed it this way”;
 

 "I can’t understand you and some of your tactics”;
 

 "Let’s have no crack out of you like that”;
 

 "I don’t care what you’ve [defense counsel] ever seen. In all my practice of law, I’ve never seen some of the things I’ve seen in this trial. [Mr. Wagner: Both sides, admittedly?] * * * From you particularly. [Mr. Wagner: Your characterization I take exception to.] * * * You have it. You can review my conduct any time you want. They’ll review yours at the same time”;
 

 "You’ll learn to take a ruling, or I’ll send you right over to the Appellate Division. Now, you do this in every trial. Now, you’ll take a ruling when I rule. You have your exception. Sit down. [Mr. Wagner: You never let me make argument.] You sit down, sir, and don’t you answer back. You had better learn something about conduct of a lawyer during trial, and I’m trying—and I’m tired of trying to teach you.”
 

 The conduct of defense counsel did not warrant or justify the extent of this treatment nor the hostility which met his exceptions, offered in a gentlemanly manner, to the charge in the jury’s presence.
 

 
 *523
 
 "The right of every person accused of crime to have a fair and impartial trial before an unbiased court and an unprejudiced jury is a fundamental principle of criminal jurisprudence”
 
 (People v McLaughlin,
 
 150 NY 365, 375; see, also,
 
 People v Crimmins,
 
 36 NY2d 230, 238). It is to be accomplished in surroundings in which both the accused and the prosecution enjoy the unfettered attention of the jury, to the end that the resulting verdict will be the product solely of evidence adduced on the witness stand (see
 
 Sheppard v Maxwell,
 
 384 US 333, 350-351;
 
 Estes v Texas,
 
 381 US 532, 540-541,
 
 supra; People v Sher,
 
 24 NY2d 454, 457). Recognizing that juries are " 'extremely likely to be impregnated by the environing atmosphere’ ”
 
 (Turner v Louisiana,
 
 379 US 466, 472, quoting dissent in
 
 Frank v Mangum,
 
 237 US 309, 349 [Holmes, J.]), "[criminal trials are to be so conducted that the proof will be legal evidence, unimpaired by intemperate conduct * * * and irrelevant asides, all of which obfuscate the development of factual issues and sidetrack the jury from its basic mission of determining the facts relevant to guilt or innocence”
 
 (People v Alicea,
 
 37 NY2d 601, 605).
 

 Neither the nature of our adversary system in which facts are elicited and determined nor the constitutional command to afford a fair trial inhibit a Trial Judge from assuming an active role in the resolution of the truth (see
 
 People v Mendes,
 
 3 NY2d 120, 121;
 
 People v Ohanian,
 
 245 NY 227, 232). Indeed, as part of the responsibility of insuring a fair trial, he may seize the affirmative, when proper and necessary, to clarify perplexing issues, to develop significant factual information, to enforce propriety, orderliness, decorum and expedition in trial
 
 (People v Gonzalez,
 
 38 NY2d 208, 210;
 
 People v Hinton,
 
 31 NY2d 71, 76;
 
 People v Singletary,
 
 54 AD2d 767;
 
 People v Russo,
 
 46 AD2d 904, 905, affd 41 NY2d 1091). A correct verdict is not assured at the hands of an unbiased, though bewildered, jury.
 

 While such an active participation is not foreclosed, care should be assiduously exercised lest the Trial Judge’s conduct, in the form of words, actions or demeanor, does not divert or itself become an irrelevant subject of the jury’s focus (see
 
 People v Carter,
 
 40 NY2d 933;
 
 People v Budd,
 
 38 NY2d 988;
 
 People v Robinson,
 
 53 AD2d 898;
 
 People v Matos,
 
 46 AD2d 903). Stationed above the clamor of counsel or the partisan pursuit of procedural or substantive advantage, the Judge functions in the critical area of regulating the proceedings so
 

 
 *524
 
 as to guide the jury beyond distracting influences and to a reasoned determination on the facts. In this function, the Bench must be scrupulously free from and above even the appearance or taint of partiality (see
 
 People v Hommel,
 
 41 NY2d 427, 429). Unnecessary and excessive interference in the presentation of proof, as well as the intimidation or denigration of counsel, particularly in the jury’s presence, are to be avoided. Since the presence of the Judge is likely to be equated with the majesty of the law itself,
 
 [2]
 
 inappropriate remarks which might throw the scales out of balance should be omitted and "care must be taken to guard against 'the possibility that the stated opinion of the trial court or even the suggestion of an opinion might be seized upon by the jury and eventually prove decisive’ ”
 
 (People v Bell,
 
 38 NY2d 116, 120).
 

 It is not imperative here, as in most similar situations, that there be a precise demarcation of the line between proper regulation of criminal trials and improper denigration of defense counsel. It is sufficient to conclude, in this setting where there were sharp issues of credibility between the victim, security guard and police officer on the one hand, and defendant and his alibi witnesses on the other, that the demeaning of counsel, his dismissal as though unworthy of respect and attention, the casting of a pall of suspicion over his case and the interjection of extraneous considerations unfairly burdened the defendant with the obligation, not only of rebutting the proof of the People, but also of countering the implications imputed by the court. Under these circumstances, the error cannot be disregarded as harmless (see, e.g.,
 
 People v Williamson,
 
 40 NY2d 1073, 1074)..
 

 Ii
 

 In support of his defense of alibi, defendant testified together with two others allegedly at home with him on the night of the robbery. In this regard, the Assistant District Attorney stated in summation: "Talk about what you didn’t hear, I heard Mr. Wagner [defense counsel] say something about where are those other people in the line-up? Talk about what you didn’t hear, my God, the brother of the defendant is sitting right there in the audience, he’s identified for you by
 
 *525
 
 the defendant, he was supposed to be at the house, at the place where the defendant was supposed to have been on the night he’s accused of a crime. Have you heard him? Here he is. (Indicating.)” The following colloquy was then entered in the record:
 

 "MR. WAGNER: Well, your Honor—your Honor, I object to that.
 

 "THE COURT: That’s his recollection of the evidence.
 

 "MR. WAGNER: Your Honor, he can’t call on the defendant to call witnesses.
 

 "THE COURT: No, but once the witness offered a defense and took the stand himself, he made the subject an issue in the trial, and you know it.
 

 "MR. WAGNER: But, your Honor—
 

 "THE COURT: He opened the door.
 

 "MR. WAGNER: Your Honor, if I may be permitted to say something?
 

 "THE COURT: If he wanted to sit mute, he could, but once he didn’t, the whole subject is opened up. Now, you have your exception. Sit down.
 

 "MR. WAGNER: Exception, Judge.
 

 "THE COURT: We’ll have no summary summation from you at this time.”
 

 It has been recently stated that, ordinarily, comment may not be made upon a defendant’s failure to testify or otherwise come forward with evidence, but, once a defendant does so, his or her failure to call an available witness who is under defendant’s control and has information material to the case may be brought to the jurors’ attention for their consideration
 
 (People v Rodriguez,
 
 38 NY2d 95, 98). An exception to this general rule obtains where the person not called as a witness by defendant is a codefendant, an accomplice not presently on trial, or one already adjudged guilty of perpetrating the same act or offense as that for which defendant is being prosecuted
 
 (People v Slover,
 
 232 NY 264, 269-270; 1 Wharton’s Criminal Evidence [13th ed], § 148, p 251; 2 Wigmore, Evidence [3d ed], § 287, p 168, n 1; see Presumption—Failure to Call Witness, Ann., 5 ALR2d 893, § 22, p 942
 
 et seq;
 
 cf.
 
 People v Rodriguez,
 
 38 NY2d 95, 100,
 
 supra; People v Sweeney,
 
 41 Hun 332). The indictment referred to an unnamed accomplice. Although defendant’s brother Richard, referred to by the prosecutor in his summation, was not a codefendant, there was testimony
 
 *526
 
 that the brother was on the stoop with defendant shortly before the incident in question and it appears from the sentencing minutes that the brother was not indicted because of being underage and that he "got his comeuppance in the Family Court.”
 

 The prosecution, citing,
 
 inter alia, People v Vidal
 
 (26 NY2d 249, 254-255), contends that defendant’s counsel, by merely stating that defendant could not be required to call witnesses, entered a general objection to the prosecutor’s remark, which was not followed by a specific objection pointing to the particular infirmity in the comment and which did not preserve the point for review. The record shows, however, that after the court turned down counsel’s general objection, when counsel started to make a statement introduced by the word "But”, counsel was interrupted and, when counsel asked if he might "be permitted to say something”, he was told to "Sit down.” Because of the court’s summary rejection of counsel’s proffered argument, it is difficult to know with certainty whether a specific objection would have been advanced. In any event, an attorney has the duty to protect the interests of his client and the right, generally, to press legitimate argument respectfully and in good faith
 
 (Matter of Hallinan,
 
 71 Cal 2d 1179, 1183, 1184). When an attorney in summation enlarges upon facts not in evidence or presses upon the jury subjects which its members have no right to consider, the required and proper practice for opposing counsel is to interrupt the summation for the purpose of objecting to the improper statements
 
 (People v Marcelin,
 
 23 AD2d 368, 370; 8 Carmody-Wait 2d, NY Prac, § 56:140) and the Trial Judge should respect the obligation of counsel to present such objections (American Bar Association Project on Standards for Criminal Justice, Function of the Trial Judge, § 5.7, pp 70-71). Since defense counsel was denied an opportunity for specification or enlargement of his objection, as to such a crucial point, his client was denied a fair trial in this respect as well.
 

 Because defendant was not accorded a fair trial, the order of the Appellate Division should be reversed and a new trial ordered.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
 

 Order reversed, etc.
 

 [1]
 

 . (See CPL 470.35, subd [1];
 
 Persky v Bank of Amer. Nat. Assn.,
 
 261 NY 212, 218; Cohen and Karger, Powers of the New York Court of Appeals, pp 625-627.)
 

 [2]
 

 . "O wise young judge, how I do honour thee” (Shakespeare, Merchant of Venice, act IV, scene 1).