Fuchsberg, J.
(dissenting). My own examination of the record in this case convinces me that the defendants received a fair trial; that, under the circumstances, the questioning by the court was neither unwarranted nor prejudicial; and that the evidence of defendants’ guilt, based on what for practical purposes was an error-free trial, was overwhelming. Accordingly, I would vote to uphold the order of the Appellate Division, which affirmed the judgment convicting the defendants.
The risk that a Trial Judge’s questions in form or in substance may convey an opinion as to the credibility of witnesses or the merits of issues justifies cautioning against a high degree of judicial intervention (People v Jamison, 47 NY2d 882; People v Moulton, 43 NY2d 944; People v Wilson, 21 Mich App 36; American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge, p 155 et seq.). Nevertheless, a preference for sparing judicial interrogation is not a rule to which there can be no exceptions; other considerations may weigh ip. the balance so that in the end the ultimate test must be substance, not numbers (cf. Chayes, The Role of the Judge in Public Law Litigation, 89 Harvard L Rev, 1281, 1297).*
For, the task of presiding over a jury trial can be demanding and, in carrying out this responsibility, the Judge need not be confined to the passive role of an automaton. So, much more than an umpire who merely recites applicable legal principles and makes testimonial rulings, the court "is not without power, to be exercised with judicious restraint * * *, to encourage clarity rather than obscurity in the development of proof’ (People v Moulton, supra, p 945; see, also, People v De Jesus, 42 NY2d 519, 523). To promote a just determination, and to try to avoid a faulty presentation from becoming the basis of a decision other than one on the merits, that role permits — and may at times require — the exertion of judicial *1000 authority to suggest particular lines of inquiry for counsel’s consideration, to advise the parties of rights the court believes have been overlooked and, when appropriate, to put questions to witnesses, particularly when the court’s participation is tailored to bolster, not impair, the operation of the adversary system (3 Wigmore, Evidence [Chadbourne rev ed, 1970], § 789, at p 189; 3 Weinstein’s Evidence, par 614 [01], at p 614-3; James & Hazard, Civil Procedure, § 1.2, at p 8; Jones, The Trial Judge — Role Analysis and Profile, in Lowe, Resource Materials for the National Conference on Judicial Selection and Tenure 55, 65 [1974]).
In the present case, the court was confronted by such considerations. If the trial were to continue, if it were not to be a morass, the court could not be merely a spectator. As the trial advanced, it became evident that inexperience on the part of the prosecuting attorney not only was slowing down the pace of the trial but, more crucially, hindering the presentation of relevant expert and lay proof, a serious but hardly unique problem (see Bazelon, The Defective Assistance of Counsel, 42 U Cin L Rev 1, 2; Kaufman, Does the Judge Have a Right to Qualified Counsel? 61 ABAJ 569, 570; Jackson, Training the Trial Lawyer, A Neglected Area of Legal Education, 3 Stan L Rev 48, 51). Convinced that something had to be done to secure a fair and expeditious trial and to avoid any more participation by himself than necessary, the Judge went so far as to suggest (in the absence of the jury) that the People’s attorney write out his questions in advance and that technical assistance be provided by a more experienced colleague in the prosecutor’s office. Only when the situation did not improve did the Judge seek to solve the problem by himself putting questions where there were flagrant voids in the examining process, as, for instance, when there was a failure to bring out elementary data on the identity of available fingerprints found in the stolen motor vehicle in which the victim was shot to death.
The record further indicates that it was not without continued care and reluctance that the Trial Judge intervened. At one point, in a side bar colloquy, he commented to the lawyers that it was "unseemly” for him to have to do so, and, on at least six separate occasions, he took time out to make clear to the jury that proof was no more or less persuasive because it was elicited by the court rather than one of the lawyers. That the court’s questions were pertinent is attested to by a concession fairly made in defendants’ briefs that, had the queries *1001 been put by counsel, they would have been unexceptional. Indeed, a sophisticated reading of the record makes evident that defendants’ objection is to the incisiveness and not the prejudice of the court’s questions. In all, the Trial Judge, having been forced to make a judgment between letting the trial drift onto the uncharted shoals of a mistrial, with the accompanying risk of double jeopardy (see People v Michael, 48 NY2d 1), on the one hand, and steering it on a true course, on the other, cannot be faulted for choosing the latter or for refusing to treat it as a "Catch-22” situation in which the court could later be charged with erring no matter how close to the wind it sailed.
In this posture, reversal is not only unfounded, but, in my opinion, cannot help but have an undue and unfortunate effect in inhibiting the discretion which a Judge must possess if the vicissitudes of trial are to be met as and when they arise.
Finally, even if, in this difficult situation, the Judge’s performance had been less than impeccable, a reversal would not be in order. The trial of a case is an art form, little less so for the Judge than for counsel, and in such matters it is naivé to demand perfection. Surely, it is unnecessary here where, inter alia, the fingerprints of both defendants were found in the stolen car in which the victim of the crime was killed resisting the efforts of his killers to abduct him, where the victim’s credit card was found on one of the defendants (presumably a complete stranger to the victim) and in which the other defendant was possessed of a clear motive for the crime (p 998). Needless to say, where error is asserted, it is to be placed in the framework of the weightiness of the evidence (People v Crimmins, 36 NY2d 230, 241; see, generally, Note, The Limits of Judicial Intervention in Criminal Trials and Reversible Error, 11 Ga L Rev 371, 372). So evaluated, it is obvious that by no means were the scales here delicately poised between guilt and innocence. Indeed, it would have made no difference if they had been; despite the substantial length of this trial, no erroneous judicial comment — of fact, of law or of opinion — is to be found in the record.
For these reasons, the judgments of conviction should stand.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur in memorandum; Judge Fuchsberg dissents and votes to affirm in a separate opinion.
Orders reversed, etc.

 In every trial, a certain percentage of questions is inevitably posed from the Bench, for example, to clarify the Judge’s own understanding of testimony as it is given, to make answers more responsive, to settle disputes over form among counsel, to aid in directing the mechanics of the trial and in other neutral matters. The court’s participation necessarily varies with the personality of a particular Judge and the complexity of the case, but experience suggests that a not insignificant number of questions during the course of any well-conducted trial are sure to emanate from an alert Judge. Viewed from this perspective, most of the court’s questions fell within the ambit of the court’s neutral "housekeeping” functions so that the actual percentage attributable to the special circumstances hereinafter detailed was relatively small.