■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JACINTO ZAMORANO, Appellant. [754 NYS2d 645] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Blumenfeld, J.), rendered April 20, 2001, convicting him of attempted murder in the second degree, burglary in the first degree (two counts), assault in the first degree, assault in the second degree, endangering the welfare of a child (two counts), and criminal possession of a weapon in the fourth degree, after a nonjury trial, and imposing sentence.

Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and a new trial is ordered before a different Justice.

While none of the errors complained of were objected to at trial, we nevertheless feel compelled, under the circumstances of this case, to reach them in the exercise of our interest of justice jurisdiction and to reverse (*see People v Mendez,* 225 AD2d 1051).

The defendant was charged with attempted murder in the second degree, two counts of burglary in the first degree, assault in the first degree, assault in the second degree, two counts of endangering the welfare of a child, sexual abuse in the first degree, and criminal possession of a weapon in the fourth degree for repeatedly stabbing the complainant in her apartment at 3:00 A.M. on the morning of March 13, 2000. The defendant offered to plead guilty to the crimes charged in exchange for an eight-year sentence. The defense counsel noted that the defendant would immediately be deported to Mexico upon his release from prison. When the People offered a sentence of 10 years, the court inquired as to the complainant's wishes. The complainant, inter alia, wanted the case to proceed to trial, and the Supreme Court followed her wishes. The Supreme Court told the defendant that he "would not be punished for proceeding to trial." Thereafter, the defendant waived his right to a jury trial.

At the trial, it was adduced that the defendant and his two brothers shared a basement apartment that was adjacent to the apartment occupied by the complainant and her two

children. The families shared a friendly relationship and the defendant and one brother often performed favors for the complainant such as loaning her money, offering use of their telephone, or watching her children while she ran errands. Sometime in 1998, the defendant approached the complainant looking for a romantic relationship. The complainant declined. On the evening in question, according to the complainant, she went to sleep at approximately 10:30 or 11:00 P.M. while watching the television. Early the next morning, the defendant woke her up with a kiss. When she asked him what he was doing, he started to stab her repeatedly and a struggle ensued. Eventually her seven-year-old son jumped on the defendant's back and pleaded with the defendant not to hurt his mother. The defendant shoved him off, but the complainant's son jumped on him again. Finally, the defendant turned and left the bedroom, sat on the complainant's couch, and asked for her forgiveness.

According to the defendant, he had spent the evening drinking, and upon his return to his apartment, he grabbed a beer and a knife to open it. He proceeded to enter the complainant's unlocked apartment to ask her about her recent vacation and to find out if she wanted to have a beer with him. The defendant claimed that when the complainant saw him, she started moving toward him with her arms raised as if she was about to hit him and that is when he accidentally stabbed her.

The Supreme Court found the defendant guilty of all of the crimes charged except sexual abuse in the first degree.

Every defendant has the right to a trial before an unbiased court (see People v De Jesus, 42 NY2d 519). Prior to the commencement of the trial, after the defense counsel had asked for an eight-year sentence and informed the Supreme Court that the defendant would immediately be deported upon his release from prison, the Supreme Court expressed the view that the defendant would likely reenter the United States illegally. Specifically, the Supreme Court stated that the defendant "will be back the next day. Are you going to see the movie 'Traffic'?" The court noted that he had kids the same age as the complainant and that "the thought that somebody would do that to my kid who has an apartment in the city * * * it's more horrific to me that they would assault my daughter with a knife than they would simply steal stuff." The court also told the complainant prior to trial, "I have a daughter your age. I wouldn't want to sentence a guy who did that, I would want to kill a guy who did that to my daughter. If it was my daughter, they wouldn't allow me to be the judge." During the trial, the Supreme Court's bias against the defendant continued when it allowed

the complainant to decide whether the case would proceed to trial, asked numerous questions thoughout the proceedings concerning the complainant's well-being and self-esteem, and improperly took on the role of an advocate rather than remaining neutral.

While it is in a court's discretion to accept or reject a plea (*see People v Washington,* 229 AD2d 726), and, pursuant to the Fair Treatment Standards for Crime Victims (*see* 22 NYCRR part 129), a court should take a victim's views into its account, the Supreme Court may not shift the burden of deciding whether to proceed to trial to the complainant. The Supreme Court offered the complainant a week to think about whether she wanted the case to proceed to trial. In so doing, the court indicated that the defendant might be sentenced to a prison term greater than 10 years if he went to trial. The complainant responded that she wanted the case to proceed to trial because she wanted to tell her story and for justice to be done. When the Supreme Court reconvened, the defense counsel asked whether there was any possibility of a negotiated resolution. The Supreme Court responded that there might be a possibility, but that if the complainant "wants her trial, she is going to get her trial," that if the complainant "has a therapeutic need to have this aired out in front of a finder of fact, I'm going to give her that therapeutic need," and that "if * * * she can't reach closure until she gets a chance to tell her story, her facts for the benefit of the trier of the facts, I'm going to give her that closure." However, the Supreme Court noted that the defendant was "not going to get punished for that." The Supreme Court later offered the complainant the option to have a trial because "it was necessary for her therapy."

Contrary to references made by the Supreme Court, the right to a trial does not belong to the complainant, but rather belongs to the defendant, and it was an abuse of discretion to base the decision to proceed to trial solely on the complainant's "therapeutic need" to have "her trial."

Moreover, while a trial judge may intervene in a trial to clarify confusing testimony and facilitate the orderly and expeditious progress of the trial, the court may not take on "the function or appearance of an advocate" (*People v Arnold,* 98 NY2d 63, 67; *see People v Yut Wai Tom,* 53 NY2d 44). Here, the Supreme Court took on the function and appearance of an advocate when, after the People's cross-examination, it asked the defendant numerous questions about the attack and tried to point out the inconsistencies and unbelievablity of his theory of defense. For example, the Supreme Court asked how so

much blood got on the defendant's white shirt, whether the defendant thought he needed to defend himself from a woman who had no weapon by using a weapon, whether he was living in the United States legally, and whether he was paid "off the books." The Supreme Court's intervention during the testimony of the complainant was also improper and evidenced the sympathy he felt for the complainant.

Under the circumstances, we agree with the defendant that he was denied his right to a fair trial because the Supreme Court permitted the complainant to decide whether the case should proceed to trial, improperly took on the function and appearance of the complainant's advocate, and repeatedly expressed his sympathy for the complainant. Accordingly, a new trial is ordered before a different Justice. Feuerstein, J.P., Krausman, Mastro and Rivera, JJ., concur.