# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 30
The People &c.,
  Respondent,
   v.
Agape A. Towns,
  Appellant.

Dianne C. Russell, for appellant.
Lisa Gray, for respondent.

STEIN, J.:

On this appeal, we are asked to decide whether defendant was denied the right to a

fair trial when the trial court negotiated and entered into a cooperation agreement with a

codefendant requiring that individual to testify against defendant in exchange for a more

favorable sentence. We hold that the trial court abandoned the role of a neutral arbiter and assumed the function of an interested party, thereby creating a specter of bias that requires reversal.

Defendant was convicted, upon a jury verdict, of six counts of first-degree robbery after he and the codefendant robbed three restaurant employees at gunpoint.[1] Although some aspects of the robbery were captured on surveillance video, the faces of the perpetrators were covered and the victims were unable to identify defendant. However, the codefendant testified for the People at trial, admitting to his own involvement and identifying defendant as his accomplice.

Prior to trial, the trial court negotiated a plea agreement directly with the codefendant, under which the codefendant pleaded guilty to the entire indictment in exchange for a determinate sentence within the range of nine to fifteen years in prison. The trial court advised the codefendant that the sentence imposed would be left to the court's discretion "entirely based upon [the codefendant's] level of cooperation in the prosecution of [defendant]," explaining that, if [the codefendant] testified "candidly and honestly and . . . cooperate[d] with the District Attorney's Office in telling the truth," the court had "every intention of [imposing] . . . the lowest end of [the] term." On the other hand, the court stated that, if the codefendant failed to cooperate or to testify truthfully "based upon the information available to the [c]ourt, that being any statements that you have already

---

[1] Although there were multiple codefendants in this case, the only codefendant pertinent to the central question raised on defendant's appeal is the codefendant who entered into a cooperation agreement with the trial court, hereinafter referred to as "the codefendant."

made or how it matches against physical evidence or other testimony in the case, and I determine that you are not being truthful, [the sentence] would be greater than nine years." The trial court further informed the codefendant that "one of the primary touchstones" of its determination concerning the codefendant's truthfulness and cooperation would be the codefendant's previously recorded statements to police.

At trial, defendant moved to preclude the codefendant's testimony, arguing, among other things, that the cooperation agreement demonstrated that the court had abdicated its responsibility to act in a neutral and detached manner. After the trial court denied defendant's motion, the codefendant testified consistent with the codefendant's previous statements to the police and identified defendant from the restaurant's surveillance footage. The details of the codefendant's agreement with the court were revealed to the jury during his testimony. Notably, the People elicited testimony from the codefendant establishing that the codefendant had not entered into an agreement with the prosecutor or anyone else from the District Attorney's office. In addition, prior to deliberations, the court acknowledged in its instructions to the jury that "the [c]ourt has entered into a[n] . . . agreement with a prosecution witness; namely [the codefendant]" (emphasis added). Defendant was convicted as noted above.[2]

---

[2] The trial court thereafter sentenced the codefendant to seven years in prison, to be followed by five years of postrelease supervision. According to the court, it downwardly departed from the promised sentencing range because the codefendant "testified truthfully [and was] extremely forthright." Defendant was ultimately sentenced to seventeen years in prison, to be followed by three years of postrelease supervision.

Defendant moved to set aside the verdict, asserting, among other things, that the court improperly injected itself into the proceedings by entering into an agreement with the codefendant, which influenced the codefendant's testimony at defendant's trial and prejudiced defendant's due process rights. The court denied the motion, reasoning that "defendant [was] mistaken when he state[d] that there existed a 'cooperation agreement' between the [c]ourt and [the codefendant] when, in fact, it was nothing more than a sentence commitment after [the codefendant] pleaded guilty." The court rejected defendant's claim that its acceptance of the guilty plea and sentencing commitment "made the [c]ourt a . . . second prosecutor in the courtroom," explaining that "[c]ourts routinely accept guilty pleas and make sentencing commitments . . . in criminal cases and defendant's characterization that it was improper for the court to do so here ha[d] no[] basis in fact or law."

On defendant's appeal, the Appellate Division affirmed (151 AD3d 1638 [4th Dept 2017]). That Court rejected the trial court's characterization of the agreement and "criticize[d], in the strongest possible terms, the conduct of the court . . . in personally negotiating and entering into a quid pro quo cooperation agreement with the codefendant whereby the court promised to sentence the codefendant within a specific range in exchange for his testimony against defendant" (id. at 1639). Nevertheless, the Appellate Division upheld the judgment of conviction, explaining that it could not "conclude on this record that defendant was deprived of a fair trial by the codefendant's testimony, nor [could] [it] conclude that the court in essence vouched for the truth of that testimony" (id.). The Court reasoned that, "[b]ecause the [trial] court's conduct . . . occurred wholly outside

the presence of the jury, . . . [it] did not assume the appearance and role of a prosecutor in the course of defendant's trial" (id.).

A Judge of this Court granted defendant leave to appeal (30 NY3d 1120 [2018]), and we now reverse.

Defendant asserts that the trial court effectively stepped into the role of prosecutor and impliedly vouched for the trial testimony of the codefendant, thereby violating defendant's fundamental constitutional right to a fair trial before a neutral and detached magistrate. He maintains that the Appellate Division's analysis improperly focused on whether the trial court's conduct took place before the jury, rather than on whether the court improperly participated in the prosecution by taking affirmative steps to secure defendant's conviction. Defendant argues that the trial court's error of entering into a cooperation agreement with the codefendant and inducing that individual to testify against defendant, viewed objectively, requires reversal because "the risk of bias was too high to be constitutionally tolerable" (Rippo v Baker, ___ US ___, 137 S Ct 905, 907 [2017]). We agree.

"A fair trial in a fair tribunal is a basic requirement of due process" (In re Murchison, 349 US 133, 136 [1955]; see US Const, Amend XIV, § 1; NY Const, art I, § 6). This Court has emphasized that "'[t]he right of every person accused of crime to have a fair and impartial trial before an unbiased court and an unprejudiced jury is a fundamental principle of criminal jurisprudence'" (People v De Jesus, 42 NY2d 519, 523 [1977], quoting People v McLaughlin, 150 NY 365, 375 [1896]). "Not only must judges actually be neutral, they must appear so as well" (People v Novak, 30 NY3d 222, 226 [2017]). The

pertinent inquiry in that regard is "'not whether the judge is actually, subjectively biased, but whether the average judge in [the same] position is likely to be neutral, or whether there is an unconstitutional potential for bias'" (id., quoting Caperton v A.T. Massey Coal Co., 556 US 868, 881 [2009]; see Williams v Pennsylvania, ___ US ___, 136 S Ct 1899, 1905 [2016]).[3]

Questions concerning the objective neutrality of a court often arise in the context of actions undertaken by the court during trial.  In People v De Jesus, for example, we held that the defendant was deprived of a fair trial when the trial court's caustic remarks directed at defense counsel "cast[] a pall of suspicion over [the defendant's] case and . . . unfairly burdened the defendant with the obligation, not only of rebutting the proof of the People, but also of countering the implications imputed by the court" (42 NY2d at 524).  While this Court did not foreclose a trial court's "active role in the resolution of the truth," we cautioned that "care should be assiduously exercised lest the [t]rial [j]udge's conduct, in the form of words, actions or demeanor, . . . divert[s] or itself become[s] an irrelevant subject of the jury's focus" (id. at 523).  We further emphasized that "the Bench must be scrupulously free from and above even the appearance or taint of partiality" (id. at 524).

More recently, in People v Arnold, this Court held that a trial court abused its discretion by calling its own witness at trial when "[i]t assumed the parties' traditional role of deciding what evidence to present, and introduced evidence that had the effect of

_____

[3] To the extent the concurrence suggests that a showing of actual bias is required, we disagree.  That contention is inconsistent with our case law, which does not impose such a heightened standard.

corroborating the prosecution's witnesses and discrediting defendant on a key issue" (98 NY2d 63, 68 [2002]).  We explained that, "[a]lthough the law will allow a certain degree of judicial intervention in the presentation of evidence, the line is crossed when the judge takes on either the function or appearance of an advocate at trial" (id. at 67).

In the related context of recusal, we have held that, "under principles of due process, a judge may not act as appellate decision-maker in a case over which the judge previously presided at trial" (Novak, 30 NY3d at 226 [internal citations omitted]).  We clarified that, in determining whether to recuse, "courts [must] evaluate whether a 'serious risk of actual bias,' based on objective perceptions and considering all of the circumstances alleged, rises to an unconstitutional level" (id. at 225-226, quoting Caperton, 556 US at 884).  Applying that standard, we concluded that "there was a clear abrogation of our State's court structure that guarantees one level of independent factual review as of right," and held that the judge's dual trial and appellate roles created a "facial appearance of impropriety which conflicted impermissibly with the notion of fundamental fairness" (id. at 226 [internal quotation marks and citation omitted]; see also Rippo, 137 S Ct at 907; Williams, 136 S Ct at 1906).

Although this case presents unique concerns, the same guiding principles apply.  It is undisputed that, as the Appellate Division concluded, the trial court "personally negotiate[ed] and enter[ed] into a quid pro quo cooperation agreement with the codefendant whereby the court promised to sentence the codefendant within a specific range in exchange for his testimony against defendant" (151 AD3d at 1639).  In so doing, the trial court improperly "assume[d] the advocacy role traditionally reserved for counsel" (Arnold,

98 NY2d at 68) and ventured from its own role as a neutral arbiter "[s]tationed above the clamor of counsel or the partisan pursuit of procedural or substantive advantage" (De Jesus, 42 NY2d at 523-524). Indeed, whatever its subjective intentions, the trial court effectively procured a witness in support of the prosecution by inducing the codefendant to testify concerning statements the codefendant made to police—which identified defendant as one of the robbers—in exchange for the promise of a more lenient sentence. Significantly, by tying its assessment of the truthfulness of the codefendant's testimony to that individual's prior statements to police, the trial court essentially directed the codefendant on how the codefendant must testify in order to receive the benefit of the bargain.[4] Under these circumstances, the trial court's conduct "conflicted impermissibly with the notion of fundamental fairness" (Novak, 30 NY3d at 226 [internal quotation marks and citation omitted]). That is, by assuming the function of an interested party and deviating from its own role as a neutral arbiter, the trial court denied defendant his due process right to "[a] fair trial in a fair tribunal" (In re Murchison, 349 US at 136). This error is not subject to

---

[4] To be clear, trial courts are not categorically precluded from initiating or facilitating plea agreements under appropriate circumstances that conform with "significant ethical, constitutional, and statutory limits" and, specifically, do not "create an impression [that the judge] is . . . aligned in interest with [the prosecutor]" (see Advisory Comm on Jud Ethics Op 17-110 [2017]). Likewise, there is nothing untoward about a court making a sentencing commitment in connection with a plea negotiated between a defendant and the People (see People v Selikoff, 35 NY2d 227, 240 [1974], cert denied 419 US 1122 [1975]). Nor is it inappropriate or unusual for a sentencing court to consider and evaluate the extent of a defendant's compliance with its obligations under a cooperation agreement between that defendant and the People (see People v McConnell, 49 NY2d 340, 346 [1980]). Here, however, the codefendant's cooperation agreement was with the trial court, not the People, and directed the codefendant to specific testimony in order to ensure a more favorable sentence within the specified range.

harmless error review and requires reversal (see People v Crimmins, 36 NY2d 230, 238 [1975]; see also Novak, 30 NY3d at 226; Williams, 136 S Ct at 1909).

In light of our decision, we need not reach defendant's claim that the trial court's actions violated the separation of powers doctrine and, because this matter must be remitted to County Court for a new trial before a different judge, we render no opinion on the remaining issues raised by defendant in his appeal. Accordingly, the order of the Appellate Division should be reversed and the case remitted to County Court for further proceedings in accordance with this opinion.

People v Agape Towns

No. 30

RIVERA, J. (concurring):

I agree that the Appellate Division order should be reversed, and the case remitted for a new trial before a different judge. Here, the trial judge personally entered into a cooperation agreement with the codefendant to testify against defendant Agape Towns at

trial, expressly promised to measure the "truthfulness" of the codefendant's testimony by comparing it to his pretrial statement, and assured the codefendant that it would sentence him to the lower end of the range provided for in the cooperation agreement if his testimony was consistent with the pretrial statement. Thus, the trial judge assumed the role of prosecutor when he negotiated and secured an agreement for identification testimony against defendant, and subsequently ruled on the presentation of that testimony in his role as judge. Therefore, while I join in the resolution of this appeal, I depart from the majority analysis to the extent it concludes the conduct here is something short of bias.

The judge's role and interest in ensuring the codefendant would testify was plain, as was the People's apprehension over the court's involvement. The record shows that the prosecutor was not a party to the agreement and was concerned about its impact on the trial proceedings. At the codefendant's plea, the prosecutor told the judge "as you can appreciate that I am—because this is a deal between the Court and [the codefendant]—I am kind of in a—a rough spot to where I don't necessarily know if and when I call [the codefendant] to stand in the trial against [defendant] what he is going to say." At defendant's trial, the prosecutor described the agreement as "a deal between the Court and [the codefendant]." The judge's protective view of that "deal" led the People to intercede when the court initially ruled to prohibit defense counsel from cross-examining the codefendant on the details of his personal cooperation agreement with the trial judge, prohibiting defense counsel from even "identify[ing] the so-called gate keeper on this cooperation agreement," insistent that it did not matter with whom the agreement was made. An Assistant District

Attorney from the Appeals Bureau eventually appeared in court, stated his Office's opinion that the limitation on cross-examination may constitute reversible error, and requested no limitation on defense counsel's cross. The judge still insisted that it was "of no moment to the jury" whether the prosecutor or the judge would be determining the "truthfulness" of the witness's testimony. The ADA from the Appeals Bureau reiterated his position and stressed that he saw "no reason to give an issue on appeal where we could avoid it." The judge eventually reversed course and allowed cross-examination, but with an instruction to the jury that the cooperation agreement did not suggest that the judge had an opinion as to the truthfulness of the testimony or defendant's guilt.

As the majority explains, the trial judge "effectively procured a witness in support of the prosecution by inducing the codefendant to testify concerning statements the codefendant made to police—which identified defendant as one of the robbers—in exchange for the promise of a more lenient sentence" (majority op at 7-8). The combination of this "quid pro quo cooperation agreement" (People v Towns, 151 AD3d 1638, 1639 [4th Dept 2017]), and the judge's rulings, informed by his personal investment in the propriety of his actions, constitute bias. The trial judge assumed the role of prosecutor while cloaked with the authority to decide how the testimony was presented, and as such he was fully invested in the presentation of the testimony as charted by him, in favor of the People (see People v Novak, 30 NY3d 222, 226 [2017]; People v Arnold, 98 NY2d 63, 68 [2002]). As this case demonstrates, the trial judge need not have a personal interest in a guilty verdict to be biased—although certainly such interest would constitute a particular species of

unconstitutional favoritism (see Williams v Pennsylvania, ___ US ___, 136 S Ct 1899, 1910 [2016], quoting Marshall v Jerrico, Inc., 446 US 238, 242 [1980] [a defendant is entitled to a judge who is not "predisposed to find against him"]; Withrow v Larkin, 421 US 35, 57 [1975] [same, recognizing when a judge has personal interest in outcome]). Partiality is not the sole criterion for bias. In this sense, I agree with the majority that reversal and a new trial are required without reference to the trial judge's subjective intentions (majority op at 7-8). The bias on display here is obvious from the trial judge's efforts to shape the People's case while avoiding reversible error.[*]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order reversed and case remitted to County Court, Monroe County, for further proceedings in accordance with the opinion herein. Opinion by Judge Stein. Chief Judge DiFiore and Judges Fahey, Garcia, Wilson and Feinman concur. Judge Rivera concurs in result in an opinion.

Decided May 7, 2019

---

[*] The majority misunderstands my point; I do not assume that a defendant must prove actual bias to establish a violation of the right to a fair trial before an impartial and neutral arbiter (majority op at 6, n 3). The law is well settled that even an appearance of bias offends the constitution (Rippo v Baker, ___ US ___, 137 S Ct 905, 907 [2017]; Williams v Pennsylvania, ___ US ___, 136 S Ct 1899, 1906 [2016]; People v Novak, 30 NY3d 222, 226 [2017]; People v DeJesus, 42 NY2d 519, 524 [1977].