People v Parker (2021 NY Slip Op 04766)





People v Parker


2021 NY Slip Op 04766


Decided on August 25, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 25, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
MARK C. DILLON
COLLEEN D. DUFFY
ANGELA G. IANNACCI
PAUL WOOTEN, JJ.


2019-03987
 (Ind. No. 1791/16)

[*1]The People of the State of New York, respondent,
v
Bruce Parker, appellant.


Jonathan Rosenberg, PLLC, Brooklyn, NY, for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Nancy Fitzpatrick Talcott, and Margaret Iocco of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Ronald D. Hollie, J.), rendered March 12, 2019, convicting him of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and criminal possession of a firearm, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
The defendant was arrested and charged, inter alia, with criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and criminal possession of a firearm, following the execution of a search warrant upon certain premises where the defendant resided, and which were occupied by three other adults. Among other things, the police found a loaded pistol in a cabinet above the refrigerator in the kitchen of the premises. After a jury trial, the defendant was found guilty of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and criminal possession of a firearm, upon a constructive possession theory. The defendant appeals. We affirm.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that the evidence was legally sufficient to prove the defendant's guilt beyond a reasonable doubt. "To support a charge that a defendant was in constructive possession of tangible property, the People must show that the defendant exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found" (People v Williams, 170 AD3d 1046, 1047; see Penal Law § 10.00[8]; People v Muhammad, 16 NY3d 184, 188; People v Manini, 79 NY2d 561, 573). "'Constructive possession may be established by direct evidence or by circumstantial evidence with inferences drawn from the facts presented in the case'" (People v Branch, 186 AD3d 1705, 1706, quoting People v Skyles, 266 AD2d 321, 322; see People v Williams, 170 AD3d at 1047).
Here, among other things, the evidence established that the defendant resided in the subject premises for six years, that the defendant was aware of the presence of the firearm in the kitchen cabinet above the refrigerator, that the defendant received mail at the subject premises, and [*2]that the defendant's DNA was found on the firearm. Based on the foregoing, the jury could reasonably infer that the defendant exercised dominion and control over the area where the firearm was found, and thus, that he constructively possessed it (see People v Williams, 170 AD3d at 1046; People v Arnold, 60 AD3d 960, 961; People v Skyles, 266 AD2d 321; see also People v Crowley, 188 AD3d 1665, 1666; cf. People v Brown, 133 AD3d 772). Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348; see People v Romero, 7 NY3d 633, 643-644; People v Bleakley, 69 NY2d 490, 495).
The defendant's contention that the Supreme Court unduly interfered in the trial proceedings by engaging in excessive questioning of witnesses is unpreserved for appellate review (see CPL 470.05[2]; People v Charleston, 56 NY2d 886, 887; People v Sookdeo, 164 AD3d 1268, 1269-1270; People v Maelia, 37 AD3d 619, 620; People v Wanton, 256 AD2d 125, 126; People v Johnson, 130 AD2d 766). Although defense counsel zealously defended the defendant and registered multiple objections, defense counsel failed to protest, even once, the conduct he now challenges on appeal (see People v Yut Wai Tom, 53 NY2d 44, 56).
In any event, contrary to the defendant's contentions and the position of our dissenting colleagues, viewing the record as a whole, we find that the course of conduct by the Supreme Court did not deprive the defendant of a fair trial, nor did it prejudice the defendant. The court's conduct during this trial did not amount to improper advocacy or bias in favor of the People and against the defendant. The court did not convey to the jury any opinion on the merits of the case. Instead, upon our extensive review of this record, the court's questions were aimed at clarifying the testimony, directing the presentation of the testimony, eliciting relevant facts, and preventing confusion by the jury.
For example, the defendant challenges, and the dissent imputes error to, the Supreme Court's questioning of one of the detectives involved in the search warrant execution. The court's questioning, read in context, merely sought to clarify why another occupant of the residence was listed as the owner of certain items seized and vouchered. In other instances, the court intervened to facilitate the orderly and expeditious progress of the trial and to assist in posing questions of witnesses (see id. at 57). Indeed, during defense counsel's examination of one of the witnesses, counsel expressed appreciation for the court's assistance in formulating a question, noting "[m]uch better said than me [sic]."
The fact that more than 200 questions were asked by the Supreme Court during this trial is not dispositive. In this regard, it is the "substance and not the number of questions asked [that] is the important consideration" (id. at 58; see People v Arnold, 98 NY2d 63, 67; People v Melendez, 31 AD3d 186, 196). Further, "[e]ven if a trial judge makes intrusive remarks that would better have been left unsaid, or questions witnesses extensively, the defendant is not thereby deprived of a fair trial so long as the jury is 'not prevented from arriving at an impartial judgment on the merits'" (People v Adams, 117 AD3d 109, quoting People v Moulton, 43 NY2d 944, 946). "[T]he line is crossed when the judge takes on either the function or appearance of an advocate at trial" (People v Arnold, 98 NY2d at 67; see People v Ojeda, 118 AD3d 919). Here, that line was not crossed and the conduct of the trial judge did not prevent the jury from arriving at an impartial judgment on the merits.
Notwithstanding our determination that the defendant was not deprived of a fair trial by the Supreme Court's interjections, we take this opportunity to remind trial judges that their discretion to intervene is not unfettered and must be exercised sparingly (see People v Arnold, 98 NY2d at 67-68; People v Jamison, 47 NY2d 882, 883).
RIVERA, J.P., DILLON, and IANNACCI, JJ., concur.
WOOTEN, J., dissents, and votes to reverse the judgment, as a matter of discretion in the interest of justice, and remit the matter to the Supreme Court, Queens County, for a new trial before a different Justice, with the following memorandum, in which DUFFY, J., concurs.
I agree with my colleagues in the majority that the evidence was legally sufficient to establish the defendant's guilt beyond a reasonable doubt, and that the verdict of guilt was not against the weight of the evidence. However, contrary to the position of my colleagues in the majority, I find that the defendant was deprived of a fair trial by the Supreme Court's repeated and egregious questioning of witnesses. Throughout the trial, the court asked more than 200 questions of witnesses which, among other things, assisted the prosecution in eliciting significant testimony and establishing the foundation for the admissibility of evidence, characterized the testimony of witnesses, and served to undermine the defense strategy. Thus, I conclude that a new trial is warranted before a different Justice.
The following facts were elicited during the trial. On April 26, 2016, Detective Michael Yu, who worked for a narcotics division of the New York City Police Department, obtained a warrant to search an apartment in Queens for drugs, drug paraphernalia, and related money. On May 4, 2016, at approximately 6:15 a.m., Detective Yu executed the search warrant with a field team of 12 members and 2 patrol officers of the police department. After an officer "ram[med] the door" to the apartment open, Detective Yu announced his presence and entered into a living room. Detective Yu observed three individuals in the living room, including two females, Shaqija Stokes and Shameeka Smith, lying on couches, and the defendant lying on the floor. Once each of those individuals was handcuffed by members of the field team, Detective Yu proceeded into a bedroom where he observed a fourth individual, Christopher Hill. After Hill was secured, Detective Yu continued his "initial sweep" of the apartment and found children in another bedroom. Once the initial sweep was complete, Detective Yu briefly left the apartment, while members of the field team remained with the occupants of the apartment, and then Detective Yu returned to the apartment with pedigree sheets to record information about the occupants of the apartment.
Detective Luis Martinez, who was part of the field team, obtained pedigree information from the defendant, who listed the address of the apartment being searched as his residential address. Detective Yu personally searched the defendant's person and found $482. Once each of the adult occupants of the apartment had provided pedigree information and been searched, those individuals were escorted outside to a prisoner van, and the children found in the apartment were released to family members.
At that point, Detective Yu began to search the bedroom where Hill had been found, and he recovered a razor blade and "small zip bag," each containing cocaine residue. Detective Yu then searched another bedroom, where he recovered a coffee grinder containing a quantity of heroin, a razor blade with an odor of narcotics, a digital scale containing residue, and narcotics packaging materials. Detective Yu also recovered from that bedroom two pieces of mail displaying the defendant's name and the address of the apartment. Detective Yu then searched the living room, where he recovered 11 10-millimeter rounds of ammunition from underneath one of the couches. Next, Detective Yu searched the kitchen, and observed a black plastic bag in a cabinet above the refrigerator, which he believed contained a firearm based upon the weight of the bag and the shape of the item inside the bag. Detective Yu notified his supervisor, and the Evidence Collection Team was contacted.
After Officer Christina Meehan of the Evidence Collection Team arrived at the apartment, she opened the bag found in the cabinet above the refrigerator and recovered a .380 caliber semi-automatic pistol. Officer Meehan removed a magazine from the firearm containing five rounds of ammunition, and then swabbed the firearm for possible DNA. Officer Meehan also examined the firearm for latent fingerprints, but was unable to recover any fingerprints. Officer Meehan then secured the firearm with zip ties and returned it to Detective Yu.
Later at the police precinct, arrest reports were prepared for each of the occupants of the apartment who had been taken into custody, and Detective Yu gave the firearm recovered from the kitchen to Detective Martinez to voucher. Detective Martinez listed only Shameeka Smith as the owner of the firearm on the voucher.
Heather Nelson, a criminalist for the Office of the Chief Medical Examiner, received [*3]three swabs from the firearm collected by Officer Meehan, which she tested for DNA. Nelson was unable to make any interpretations or comparisons from a swab of the grip area of the firearm, and was unable to determine whether the defendant was a contributor to the sample of DNA obtained from a swab of the trigger and trigger guard. However, Nelson opined that DNA obtained from a swab of the slide grip grooves of the firearm contained a mixture of DNA sources which included the defendant.
The defendant and the other adult occupants of the apartment were charged with, inter alia, criminal possession of a weapon. Following the defendant's trial, the defendant was convicted of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and criminal possession of a firearm. On appeal, the defendant argues, among other things, that he was deprived of a fair trial due to the Supreme Court's repeated interjections during the questioning of witnesses, which occurred on over 200 occasions throughout the trial.
The defendant's contention that he was deprived of a fair trial due to the Supreme Court's interjections during the questioning of witnesses is unpreserved for appellate review, since defense counsel did not object to the court's conduct (see CPL 470.05[2]; People v Sookdeo, 164 AD3d 1268, 1269-70). Nevertheless, under the circumstances presented, I find that the defendant's contention should be reached in the exercise of our interest of justice jurisdiction (see CPL 470.15[6][a]).
Although a trial court has discretion to question witnesses to "clarify[ ] confusing testimony and facilitat[e] the orderly and expeditious progress of the trial" (People v Yut Wai Tom, 53 NY2d 44, 57), the trial court's discretion "is not unfettered," as my colleagues in the majority acknowledge (People v Smith, 181 AD3d 828, 830). The trial judge "should be guided by the principle that his [or her] function is to protect the record, not to make it" (People v Yut Wai Tom, 53 NY2d at 58). Thus, while it is true, as the majority points out, that "the number of questions asked" is not dispositive (id.), "'the court's discretion to intervene must be exercised sparingly'" (People v Smith, 181 AD3d at 830 [emphasis added], quoting People v Arnold, 98 NY2d 63, 68). As the Court of Appeals has cautioned, "[a] Trial Judge's examination of witnesses carries with it so many risks of unfairness that it should be a rare instance when the court rather than counsel examines a witness" (People v Yut Wai Tom, 53 NY2d at 57 [emphasis added]), "as excessive interference or the suggestion of an opinion on the part of the Trial Judge might well prove decisive in the minds of the jury" (People v Jamison, 47 NY2d 882, 883-884). Indeed, "even proper questions from trial judges present significant risks of prejudicial unfairness, particularly when the trial judge 'indulge[s] in an extended questioning' of witnesses" (People v Retamozzo, 25 AD3d 73, 87, quoting People v Yut Wai Tom, 53 NY2d at 58). The trial judge's obligation to avoid taking on even the "appearance of an advocate at trial" (People v Arnold, 98 NY2d at 67) is rooted in "'a fundamental principle of criminal jurisprudence'" (People v De Jesus, 42 NY2d 519, 521, quoting People v McLaughlin, 150 NY 365, 375), that every person accused of a crime has a right to "'have a fair and impartial trial before an unbiased court'" (People v De Jesus, 42 NY2d at 521, quoting People v McLaughlin, 150 NY at 375). Thus, the trial judge must "'guard against the possibility that . . . even the suggestion of an opinion might be seized upon by the jury and eventually prove decisive'" (People v De Jesus, 42 NY2d at 524, quoting People v Bell, 38 NY2d 116, 120 [internal quotation marks omitted]), and the trial judge's failure to "be scrupulously free from and above even the appearance or taint of partiality" violates the defendant's fundamental right to a fair trial (People v De Jesus, 42 NY2d at 524).
With these principles in mind, it is difficult to conceive of a more fundamental deprivation of a defendant's right to a fair trial than a trial judge repeatedly and flagrantly intervening in the questioning of witnesses in a manner that conveys the appearance of serving as an advocate for the People. Consequently, where a defendant raises a meritorious contention that he or she was deprived of a fair trial due to the trial court's interjections during the questioning of witnesses, this Court has consistently reached the issue in the interest of justice despite defense counsel's failure to raise objections to the trial court's interjections (see e.g. People v Mitchell, 184 AD3d 875, 876; People v Ramsey, 174 AD3d 651; People v Sookdeo, 164 AD3d 1268; People v Davis, 147 AD3d 1077; People v Chatman, 14 AD3d 620).
Furthermore, I conclude that in this case, the defendant was deprived of a fair trial, as the trial judge engaged in a pattern of repeatedly interjecting himself into the questioning of witnesses throughout the trial. The trial judge engaged in extensive questioning of witnesses, usurped the role of the prosecutor, elicited significant testimony from the People's witnesses, made statements summarizing and characterizing the testimony of witnesses, undermined the defense's cross-examination of the People's witnesses, and "generally created the impression that [he] was an advocate for the People" (People v Savillo, 185 AD3d 840, 842).
Specifically, during direct examination of Detective Yu, the witness speculated as to why Detective Martinez listed Smith as the only owner of the firearm on the voucher, stating that the reason was "probably" because Smith was "the first arrest that was input into the system," and "we're only allowed to select one owner." However, Detective Yu acknowledged that "I can't answer as to why Detective Martinez vouchered the way that he did." Defense counsel objected to the testimony as speculative, and the Supreme Court sustained the objection. The prosecutor then moved off that topic and asked Detective Yu about what happened to the gun after it was sealed in an envelope, but the court returned to the topic by interjecting the following question to Detective Yu: "And, detective, each of these separate items that had been vouchered, items that were in each of the rooms, was Shameeka Smith the name, the first name in each of those cases? Meaning it sounded like you were saying that it was inputted, Shameeka Smith's name was inputted because she was the first one arrested." Thus, the court reiterated the same testimony to which it had just sustained an objection as speculative, which undermined the defense strategy to show that there was reasonable doubt as to whether the firearm recovered by the police belonged to the defendant. Moreover, the court's interjection provided an explanation to the jury as to why the police had labeled only Smith as the owner of the gun, and had the potential to convey to the jury that the court agreed with Detective Yu's speculation as to why Smith was the only individual listed as the owner of the gun. Thus, while my colleagues in the majority determine that the court's interjection in this instance "merely sought to clarify" the testimony, I respectfully disagree and determine that the court elicited testimony which had been stricken, afforded an explanation to what otherwise would have been a hole in the People's theory that the gun belonged to the defendant, and undermined the defense's theory that the firearm belonged to Smith, and had no connection to the defendant.
Further, during cross-examination of Detective Yu, defense counsel elicited testimony that all of the other adult occupants of the apartment had been arrested for the same charges as the defendant, including the criminal possession of a weapon charges. Defense counsel then asked the witness if "there came a point when you testified in the Grand Jury," and before the witness could respond, the Supreme Court interjected with the following statement: "Okay, jurors, just so that you're aware of the legal process, the defendant is not here on trial because he's been arrested. He's on trial, as I had mentioned to you before, because he's been indicted by the Grand Jury so that an arrest, the arrest of someone and whether or not someone is indicted, are two different things." The court's interjection in this regard served to undermine the significance of evidence elicited by defense counsel that the other adult occupants of the apartment had been arrested for the same charges as the defendant, and could have conveyed to the jury that the defendant was guilty simply because he had been indicted by a grand jury.
Further, during direct examination of Detective Martinez, the Supreme Court intervened to assist the prosecutor with eliciting testimony to establish a chain of custody for the magazine and ammunition. After the prosecutor asked how many rounds of ammunition Detective Martinez had received, and whether the magazine and ammunition were inside the gun when it was received, the court offered advice to the prosecutor, stating "[y]ou may want to . . . first" ask the witness "what, if anything, he had done with those items." Following the court's advice, the prosecutor then elicited testimony that once Detective Martinez received the magazine and ammunition, he vouchered them, and the witness offered a description of the "vouchering process."
The Supreme Court also intervened during direct examination of Officer Meehan to summarize the witness's testimony and provide guidance to the prosecutor, stating the following: "Counsel, at this point I'm understanding that the bag is taken from the shelf and the cabinet, put on the shelf. The officer mentions two pairs of latex gloves. She's mentioning making the gun safe. [*4]It's unclear as to what happens in what order. So, you know, take her through the process."
Also during direct examination of Officer Meehan, the Supreme Court twice intervened to assist the prosecutor with eliciting testimony that although the defendant's fingerprints were not found on the firearm, the officer had not recovered latent prints in around 100 other firearms cases she had worked on. The court first interjected to instruct the prosecutor to "[h]ave [Officer Meehan] first describe or define what a latent print is," and then intervened to advise the prosecutor how to appropriately pose a question about the other firearms cases the officer had worked on ("You want to ask her if she in her experience . . . lifted latent prints from a handgun").
Further, the Supreme Court effectively assumed the role of the prosecutor in conducting direct examination of a firearms expert by posing a succession of questions regarding how the witness tested the firearm to determine if it was operable. At one point during the court's questioning of the witness, the prosecutor attempted to retake control of his own examination of the witness, stating "I'm just asking for more details about the visual inspection, your Honor, as to what he saw," but the court ignored the prosecutor's remark and continued to pose questions directly to the witness, including whether there were "other things that you would have to do to make the determination of operability."
In addition to the aforementioned instances, the Supreme Court on many other occasions intervened with the questioning of witnesses. Although some occasions may have served to facilitate the progress of the trial and clarify testimony, "even proper questions from trial judges present significant risks of prejudicial unfairness, particularly when the trial judge 'indulge[s] in an extended questioning' of witnesses" (People v Retamozzo, 25 AD3d at 87, quoting People v Yut Wai Tom, 53 NY2d at 58). Moreover, the court engaged in a pattern of conduct conveying the appearance of aiding the prosecution, which presented a significant risk of tainting the minds of the jurors and thereby influencing the verdict (see People v De Jesus, 42 NY2d at 524).
Consequently, I conclude that the Supreme Court's improper interference with the questioning of witnesses deprived the defendant of a fair trial, and thus, a new trial is warranted before a different Justice (see People v Savillo, 185 AD3d at 842; People v Hinds, 160 AD3d 983, 984; People v Davis, 147 AD3d 1077, 1079).
ENTER:
Maria T. Fasulo
Acting Clerk of the Court